**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| NXT Power, LLC,<br><br>Plaintiff,<br><br>v.<br><br>Nextpower, Inc.,<br><br>Defendant. | ) | JURY TRIAL DEMANDED |

## VERIFIED COMPLAINT

Plaintiff NXT Power, LLC ("NXT Power"), an Illinois corporation, hereby complains that Defendant Nextpower, Inc. ("Nextpower") is liable for willful trademark infringement and unfair competition. In support of this Verified Complaint, NXT Power alleges as follows:

## NATURE OF THE ACTION

1. NXT Power is a Chicago-based company established in February 2020.

2. NXT Power manufactures power conditioners and uninterruptible power supplies ("UPS") that protect critical equipment in a wide variety of industries, including clinical, analytical, industrial, scientific, printing, medical, data storage, medical imaging, and retail technology.

3. Since its inception in 2020, NXT Power has grown to a multimillion-dollar company, trading on its brand and reputation for high-quality power solutions that give businesses that rely on uninterrupted power the confidence they need to continue operations.

4. NXT Power owns federal trademark registration no. 6,310,464 for the word mark NXT POWER, in connection with "Electrical and electronic goods, namely, electrical current

switches, uninterruptible power system comprised of power line conditioners, surge protector, inverters, storage batteries, and voltage regulators." Attached hereto as Exhibit 1 is a true and correct copy of the NXT POWER trademark registration and recorded assignment[1].

5. Nextpower is a solar power company that designs, deploys and operates technologies, tools and services to deliver solar generated electricity for the commercial and utility-scale markets.

6. Nextpower's products include trackers, wiring solutions, foundations, energy storage, monitoring and control systems, inverters, power conversion systems, and software for independent power producers, construction firms, and data centers.

7. In late 2025, Nextpower announced that it was rebranding from Nextracker, Inc. to Nextpower, Inc. Leading up to the rebrand, Nextpower acquired a number of trademark registrations with similar names. It also applied for its own "Nextpower" trademarks with the United States Patent and Trademark Office.

8. Given the size of Nextpower, the significance of the rebrand, and Nextpower's other efforts to acquire similar trademark registrations, on information and belief, Nextpower was aware of NXT Power or NXT Power's trademark when it rebranded to a name that was phonetically the identical: Nextpower. Nonetheless, Nextpower moved forward with the rebrand, intentionally infringing NXT Power's trademarks.

9. Since the rebrand, Nextpower has been operating in the same industry as NXT Power, using the phonetically identical and textually strikingly similar name "Nextpower."

10. Nextpower's rebrand and subsequent use of "Nextpower" in connection with goods

[1] The registration certificate identifies Tom Gornick, NXT Power's Founder and President, as the owner. Mr. Gornick assigned the NXT POWER trademark to NXT Power, LLC on April 23, 2023, and the assignment was recorded on April 26, 2023.

and services that are similar to or the same as those offered by NXT Power has already resulted in actual consumer confusion. In fact, NXT Power's sales representatives have received a request for Nextpower's products from an electrical contractor customer believing the two companies to be associated or the same company.

11. Nextpower's infringement of NXT Power's trademark is causing NXT Power ongoing irreparable harm and monetary damages, and must be stopped.

**THE PARTIES**

12. Plaintiff NXT Power, LLC is an Illinois corporation with its principal place of business located at 1070 S. Northpoint Blvd., Unit D, Waukegan, IL 60085.

13. Defendant Nextpower, Inc. is a Delaware corporation with its headquarters located at 6200 Paseo Padre Pkwy, Fremont, CA 94555.

**JURISDICTION AND VENUE**

14. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 because the Complaint alleges violations of federal trademark law under the Lanham Act, 15 U.S.C. § 1051, *et seq.*

15. This court has supplemental jurisdiction over NXT Power's state-law claims under 28 U.S.C. § 1367 because they arise from the same novel or complex issues as the federal-law claims.

16. This Court may exercise personal jurisdiction over Nextpower because it regularly conducts business in this District by offering products for sale, including products offered under its infringing marks, in this District.

17. Venue is proper in this Court under 28 U.S.C. 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

### A. NXT Power, LLC

18. NXT Power was started in or around February 2020 by a group of power-industry experts and industry veterans.

19. Because of its inopportune co-incidence with the COVID-19 outbreak, the company only truly began gaining traction in the last three years. During that short time, NXT Power has grown into a multimillion dollar operator.

20. NXT Power delivers industry leading power quality solutions. The company manufactures isolation-transformer-based power conditioners, inverters, and uninterruptible power supplies ("UPS") that protect critical equipment in various industries, including clinical, analytical, industrial, scientific, printing, data centers and retail technology.

21. NXT Power's goal is to provide reliable power protection solutions that businesses worldwide depend on 24/7, ensuring customers can focus on their core operations without interruption from power disturbances.

22. In connection with its product offerings, NXT Power owns the federal trademark registrations for NXT POWER in international class 009 for "Electrical and electronic goods, namely, electrical current switches, uninterruptible power system comprised of power line conditioners, surge protector, inverters, storage batteries, and voltage regulators" ("the NXT POWER Mark").

23. In addition, NXT Power offers its services related to providing its goods and expertise on its technology under its company name, and has therefore, established common law rights in NXT POWER for services related to supplying electrical products, including for power conditioners and UPS, to a vast array of industries, including clinical, analytical, industrial, scientific, printing, data centers and retail technology.

24. NXT Power applied for its Mark on February 27, 2020, with a date of first use in commerce of August 28, 2020. The United States Patent and Trademark Office (the "USPTO") issued the registration on March 30, 2021, as U.S. Reg. No. 6,310,464.

25. NXT Power was conceived of to provide the future of power, offering clean and reliable power solutions as a better alternative to those available in the marketplace.

26. Its brand is the manifestation of that connection to the future. In the few short years since operations began, NXT Power has built a reputation for providing quality power solutions, trading on its NXT POWER Mark.

27. Since its inception, NXT Power has spent substantial time, money, and other resources developing, advertising, and otherwise promoting the NXT POWER Mark in connection with its power solutions.

28. As a result of NXT Power's efforts, members of the consuming public readily identify power solutions bearing or sold under the NXT POWER Mark as being endorsed and approved by NXT Power, and trust NXT Power as the source of the various power solutions offered for sale and sold under the NXT POWER Mark.

29. NXT Power has earned valuable goodwill from being widely recognized, associated with, and identified by consumers and the power solutions industry.

30. NXT Power's use of the NXT POWER Mark has been continuous and there has been no abandonment of the NXT POWER Mark.

31. The NXT POWER Mark is well known and represents the source and origin of NXT Power's products and services.

32. The NXT POWER Mark is one of NXT Power's most valuable assets.

33. NXT Power began using the NXT POWER Mark in commerce before Nextpower.

**B. Nextpower's Use of Infringing Marks**

34. Defendant Nextpower Inc. was founded in 2013 as Nextracker, Inc. and currently is a multi-billion dollar publicly traded corporation, located in Fremont, California.

35. Nextpower describes itself as a leading provider of solar and power technology solutions.

36. In or around November 2025, as part of a strategic initiative, Nextpower announced a corporate rebranding to Nextpower[2].

37. In announcing the rebrand, Nextpower's CEO, Dan Shugar, explained:

> Our customers want coherent, integrated solutions that install faster, perform better, and operate more reliably over their lifetime. . . . Over the past several years, we have been systematically executing a strategy to expand our portfolio and create a comprehensive technology platform that delivers significant benefits across the solar value chain. . . .Our new name reflects this transformation. . . . Nextpower is building on decades of leadership in solar tracking, creating a leading integrated technology platform to support the world's most advanced clean energy systems. The world is in an electricity super-cycle, and solar is the primary driver, adding more capacity than any other source, at lower cost. As we expand into power conversion systems (PCS), robotics, and AI [artificial intelligence], we're enabling customer solutions engineered for the scale, reliability, and complexity of today's solar power plants.[3]

38. Prior to Nextpower's rebrand, Nextpower accessed NXT Power's website on multiple occasions.

39. Prior to Nextpower's rebrand, four different visitors from Nextpower accessed NXT Power's website six separate times and viewed nine pages.

40. Nextpower accessed NXT Power's website on at least May 6, 2025 and viewed the webpage at www.nxtpower.com/about two times.

41. Nextpower accessed NXT Power's website on at least May 7, 2025 and viewed

---

[2] *See* https://www.powermag.com/nextracker-rebrands-to-nextpower-as-part-of-move-to-expand-solar-power-services/ (last accessed August 2, 2026).
[3] *Id.*

the webpage at www.nxtpower.com and www.nxtpower.com/about and played the video on the "about us" page.

42. Nextpower accessed NXT Power's website on at least May 12, 2025 and viewed the webpage at www.nxtpower.com/contact/.

43. NXT Power's website includes a stylized version as shown below of its registered trademark NXT POWER along with ® to indicate it is a registered trademark.

44. On information and belief, Nextpower viewed the NXT POWER trademark and its "®" marking and was aware NXT Power has a registered trademark.

45. On information and belief, Nextpower was aware of NXT Power's goods and services, including power inverters.

46. Shortly before Nextpower's rebrand, Nextpower's affiliate, Nova Subsidiary, LLC ("Nova"), which acts as a holding company for intellectual property, apparently attempted to clear the field by applying for and/or acquiring trademark registrations in connection with the rebrand.

47. In August 2025, Nova acquired the applied-for trademark NEXTPOWER & Design shown below from a Chinese company, Guangdong Sunray Power Co, Ltd. for: "Accumulators, electric; Battery chargers; Electric wires and cables; Rectifiers; Photovoltaic inverters; Battery boxes; Electric transformers; Batteries, electric; Current rectifiers; Inverters." U.S. Trademark App. Ser. No. 98/894,631 (the "NEXTPOWER Design Mark").

48. The claimed first use in commerce for the NEXTPOWER Design Mark is February 1, 2024.

49. On information and belief, Nextpower is not using the NEXTPOWER Design Mark in commerce.

50. In September 2025, Nova received an assignment from NextPower Capital Advisors, LLC ("NextPower Capital") of the unregistered common law rights in the mark NEXTPOWER and the company's pending application to register the mark NEXTPOWER CAPITAL. U.S. Trademark App. Ser. No. 99/214,429 (the "NextPower Capital Mark").

51. The claimed first use in commerce for the NextPower Capital Mark is as early as 2016.

52. The USPTO issued the registration of the NextPower Capital Mark to Nova on May 19, 2026 as U.S. Reg. No. 8,259,120.

53. On information and belief, Nextpower is not using the NextPower Capital Mark in commerce.

54. In the months leading up the November 2025 rebrand, Nova also proceeded to file trademark applications for the following trademarks on Nextpower's behalf, all of which remain pending:

| Mark | US App. No. | Filing Date |
|---|---|---|
| NEXTPOWER | 99383592 | Sept. 9, 2025 |
| NEXTPOWER | 99465297 | Oct. 28, 2025 |
| NEXT<br>POWER | 99466984 | Oct. 28, 2025 |
| THE POWER OF NEXT | 99491222 | Nov. 11, 2025 |
| POWERING WHAT'S NEXT | 99491231 | Nov. 12, 2025 |

(the "Nextpower Applications"). Collectively, the registrations and applications owned by Nova

identified in this Complaint are referred to as the NEXTPOWER Marks.

55. The goods identified in the Nextpower Applications are:

"Metal structures for mounting and supporting solar panels, photovoltaic modules, and photovoltaic cells, namely, solar tracking systems; metal hardware, namely, solar panel mounts". Class 6.

"Solar trackers, namely, driving motors, other than for land vehicles, for positioning of photovoltaic modules relative to the sun, and replacement parts therefor; solar-tracking systems comprised of electric motors for machines for positioning of photovoltaic modules relative to the sun to maximize collection of solar energy; solar-tracking systems consisting of machine motors and gears for orienting solar panels, namely, for automatically positioning of photovoltaic modules relative to the sun; solar trackers for solar photovoltaic electric power generation systems comprised of motors, gears, and drives for orienting solar panels; robotics systems comprised of fixed and/or mobile industrial robots for cleaning large-scale solar sites." Class 7.

"Ground-mounted solar tracker systems comprised primarily of photovoltaic modules that are rotationally positioned to optimize solar energy collection; solar panels for production of electricity; photovoltaic installation apparatus, namely, solar modules for production of electricity, solar thermal and electric receivers, tracking mechanisms and concentrating optics, and control algorithms; robotics systems comprising of fixed and/or mobile robots for cleaning large-scale solar sites; balance of Systems (BoS) solar photovoltaic equipment, namely, electrical connectors; electrical components in the nature of combiner boxes being switch boxes, junction boxes, and terminal boxes; Balance of Systems (BoS) solar voltaic equipment, namely, electrical connectors and photovoltaic systems that convert sunlight into electric and thermal energy primarily consisting of photovoltaic modules, and related parts therefor; Automated self-contained electronic surveillance devices that can be deployed to gather evidence or intelligence in remote locations; electronic video surveillance installations, comprising of antennas, cameras, switchers, monitors, microphones, and recorders for management of electronic video surveillance installations; electronic video surveillance products, namely, electronic components of security systems; autonomous stationary camera for utility-scale solar plants to detect hazardous and danger conditions, namely, fires, smoke, and heat; autonomous stationary camera to be used in security, reconnaissance, surveillance, access control, and first responder situations at utility-scale solar plants." Class 9.

"Autonomous robotic vehicles for inspection of solar facilities; autonomous robotic vehicles for inspection and maintenance of solar plants." Class 12.

"Provision of information concerning commercial sales of bundled utility-scale solar products and services; providing warranty services, namely, arranging for repair of solar tracking systems pursuant to service agreements." Class 35.

"Inspection, testing, and troubleshooting in the nature of diagnosing problems with of

utility-scale solar and battery storage systems; Architectural design and engineering services of solar energy production facilities, namely, planning, layout, mapping, geographic, surveys, site testing, and foundation, racking and electrical balance of systems design; design of solar photovoltaic systems, namely, design and planning of solar-tracking systems; drafting and development of photovoltaic systems including solar trackers; engineering services in the field of solar-tracking systems; utility solar power plant inspection services, namely, inspection of utility solar power plants via an unmanned teleoperated autonomous land vehicle for quality control purposes; detection and reporting of anomalies in the nature of hot spots as a result of poor connections identified by thermal and visual inspection." Class 42.

56. All of the Nextpower Applications were filed on an intent-to-use basis.

57. All of the Nextpower Applications were filed by Nova but signed by Nextpower in-house attorney Philip Reuther.

**C. Actual Consumer Confusion**

58. Since Nextpower announced its rebrand actual confusion has occurred.

59. NXT Power offers for sale and sells its products and services through the use of sales representatives.

60. For example, on at least one occasion, a NXT Power sales representative has contacted a customer in an attempt to sell NXT Power's power solutions. The customer expressed interest in NXT Power's products and also requested information regarding solar power options, believing NXT Power—which does not offer solar power solutions—to be associated with Nextpower—which does offer solar power solutions.

**<u>COUNT I</u>**
**<u>(Trademark Infringement – Section 32 of the Lanham Act, 15 U.S.C. § 1114)</u>**

61. NXT Power realleges and incorporates by reference each and every allegation in the foregoing paragraphs as if fully stated herein.

62. NXT Power owns all right, title and interest in and to the registration for NXT Power and all common law rights in NXT Power.

63. Nextpower is improperly and willfully infringing the federally registered NXT POWER Mark in interstate commerce through the complete rebrand of their company, including the advertising, promotion, and sale of their goods and services using the name "Nextpower."

64. Nextpower's use of NEXTPOWER in connection with sales of their power-related products and services is causing actual confusion and will likely continue to cause confusion among consumers who believe, contrary to fact, that Nextpower's products and services are sold by, or are otherwise sponsored by or affiliated with NXT Power, or that Nextpower is the rightful owners of the NXT POWER Mark.

65. Nextpower's use of NEXTPOWER Marks infringes NXT Power's exclusive rights in the NXT POWER Mark within the meaning of § 32 of the Lanham Act, 15 U.S.C. § 1114. Particularly, customers are likely to purchase Nextpower's products and services believing them to be those of NXT Power, or otherwise sponsored by or affiliated with NXT Power, thereby resulting in a loss of goodwill and sales to NXT Power.

66. Alternatively, given the size of Nextpower, which is exponentially larger than NXT Power, customers may mistake NXT Power's products and services as being associated with Nextpower, resulting in NXT Power losing the value of its trademark, including its brand identity, control over goodwill and reputation, and ability to move into new markets.

67. Nextpower's conduct constitutes trademark infringement, and/or induces or contributes to acts of trademark infringement, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

68. As a direct and proximate result of Nextpower's conduct, NXT Power has been, and is likely to be, substantially injured in its business, including harm to its goodwill and reputation and the loss of revenues and profits.

69. Unless enjoined by this Court, Nextpower will continue to infringe upon the NXT POWER Mark, thereby creating the likelihood of consumer confusion, deceiving the public, and causing NXT Power immediate and irreparable injury, including loss of goodwill and loss of income, for which it has no adequate remedy at law.

70. Nextpower has engaged in the above-referenced acts of trademark infringement with full knowledge of NXT Power's exclusive rights in the NXT POWER Mark, and Nextpower is willfully continuing to engage in such acts of intentional infringement, thus making this case exceptional and entitling NXT Power to an award of treble its actual damages, plus attorneys' fees in bringing and maintaining this action.

**COUNT II**
**(False Designation of Origin – Section 43(a) of the Lanham Act, 15 U.S.C. § 1125)**

71. NXT Power realleges and incorporates by reference each and every allegation in the foregoing paragraphs as if fully stated herein.

72. The NXT POWER Mark operates as an indicator of source and/or origin and has acquired distinctiveness via secondary meaning.

73. The NXT POWER Mark has been in continuous and exclusive use throughout the United States, by NXT POWER, since at least as early as August 28, 2020.

74. The NXT POWER Mark is distinctive in the minds of the relevant purchasers of NXT Power's services as being associated exclusively with NXT Power.

75. Nextpower, through use of the NEXTPOWER Marks have, without authorization, in connection with their goods and/or services in commerce, made or contributed to the making of false designations of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact, which are likely to cause confusion, mistake, or to deceive as to the affiliation, connection or association of Nextpower with NXT Power, and/or as to the origin,

sponsorship or approval of Nextpower's goods and/or services, in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

76. Consumers are likely to purchase Nextpower's goods and services offered under the NEXTPOWER Marks believing that Nextpower affiliated, connected or associated with NXT Power, resulting in a loss of goodwill to NXT Power.

77. Consumers are also likely to purchase Nextpower's goods and services under the infringing NEXTPOWER Marks believing that Nextpower is the rightful owner of the NXT POWER Mark, resulting in a loss of goodwill to NXT Power.

78. Alternatively, consumers are likely to purchase NXT Power's goods and services, believing them to be associated with and/or owned by Nextpower.

79. Nextpower's acts as set forth herein constitute unfair competition, and/or induce or contribute to acts of unfair competition.

80. Nextpower's unfair acts have been committed in bad faith and with the intent to cause confusion, mistake and/or to deceive.

81. As a direct and proximate result of Nextpower's conduct, NXT Power has been, and is likely to be, substantially injured in its business, including harm to its goodwill and reputation and the loss of revenues and profits.

82. Unless enjoined by this Court, Nextpower will continue to compete unfairly with NXT Power, thereby deceiving the public, creating the likelihood of consumer confusion, and causing NXT Power immediate and irreparable injury for which it has no adequate remedy at law.

## COUNT III
## (Deceptive Trade Practices – 815 ILCS §§ 510/1, *et seq.*)

83. NXT Power realleges and incorporates by reference each and every allegation in the foregoing paragraphs as if fully stated herein.

84. Nextpower has knowingly and willfully engaged in deceptive trade practices within the meaning of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 *et seq.*, by causing likelihood of confusion or of misunderstanding as to the source, origin or sponsorship of Nextpower's products, by causing likelihood of confusion or of misunderstanding as to the affiliation, connection or association of Nextpower with the NXT POWER Mark and using deceptive representations or designations of origin in connection with Nextpower's products.

85. The foregoing acts of Nextpower constitute willful, deceptive acts and practices in the conduct of business, trade and/or commerce, in violation of Illinois Uniform Deceptive Trade Practices Act, 815 ILCS Sections 510/1 *et seq.*, for which NXT Power is entitled to injunctive relief, actual damages, treble damages, punitive damages, attorneys' fees, and costs.

86. The foregoing acts of Nextpower will create a likelihood of injury to the public image and business reputation of NXT Power, in that the public will likely associate Nextpower's goods and services with NXT Power and/or NXT Power's goods and services, and cause the dilution of the distinctive quality of NXT Power's Mark Marks, in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510/1 *et seq.*, for which NXT Power is entitled to injunctive relief.

87. The foregoing acts of Nextpower were designed intentionally to mislead and deceive the public and trade as to the identity of Nextpower or as to the connection of Nextpower with NXT Power, in violation of 815 ILCS §§ 510/1 *et seq.*, for which NXT Power is entitled to injunctive relief.

88. The unauthorized use by Nextpower of the NEXTPOWER Marks is causing and is likely to cause substantial injury to the public and to NXT Power.

**COUNT IV**
**(Illinois Common Law – Unfair Competition)**

89. NXT Power realleges and incorporates by reference each and every allegation in the foregoing paragraphs as if fully stated herein.

90. Nextpower's acts constitute common law trademark infringement in violation of state common law, including the common law of the State of Illinois. Such acts of common law trademark infringement constitute unfair competition within the meaning of the common law, including the common law of the State of Illinois.

91. Upon information and belief, Nextpower's conduct was and continues to be willful, intentional, and in bad faith.

92. Nextpower's acts have caused, and continue to cause, irreparable harm to NXT Power, and NXT Power has no adequate remedy at law such that the damage to NXT Power will continue unless and until enjoined by the Court.

**JURY DEMAND**

NXT Power demands a trial by jury on all issues.

**PRAYER FOR RELIEF**

WHEREFORE, NXT Power prays for judgment against Nextpower as follows:

1. That Nextpower, its officers, members, directors, agents, servants, employees, successors, licensees, representatives, successors, assigns, and all persons acting in concert or participation with it, be preliminarily and permanently enjoined and restrained from:

(i) Manufacturing, importing, distributing, advertising, offering to sell or selling any products or services under the NEXTPOWER Marks;

(ii) Using the NEXTPOWER Marks or any confusingly similar marks in connection with any goods or services;

(iii) Using any false designation of origin, or representing or suggesting directly or by implication that Nextpower, or any brands or other source identifiers used by Nextpower, are affiliated with, associated with, authorized by, or otherwise connected to NXT Power, or that Nextpower is authorized by NXT Power to use the NEXTPOWER Marks or any other confusingly similar marks;

(iv) Infringing or contributing to the infringement of the NXT POWER Mark, or otherwise engaging in unfair competition with NXT Power in any manner or engaging in any conduct tending to falsely represent or likely to confuse, mislead or deceive suppliers, purchasers, or any member of the public into thinking that Nextpower or any of its goods or services are affiliated with NXT Power, or that NXT Power has otherwise sponsored, approved, or licensed any products or services of Nextpower;

(v) Engaging in any other activity constituting unfair competition with NXT Power, or constituting infringement of the NXT POWER Mark; and

(vi) Assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs (i) through (v) above, or effecting any assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (i) through (v) above.

2. That Nextpower be directed to file with the Court and serve on NXT Power, within thirty (30) days after entry of a final injunction, a report in writing under oath setting forth in detail the manner and form in which Nextpower have complied with the injunction;

3. That Nextpower, by its unauthorized use of the NEXTPOWER Marks, has violated NXT Power's rights under 15 U.S.C. §§ 1114, 1125(a) and 1125(d), the Illinois Uniform Deceptive

Trade Practices Act, 815 ILCS § 510/1 *et seq.*, and Illinois common law, and that it has done so willfully and for the purpose of violating NXT Power's rights and damaging NXT Power's goodwill and reputation; and

4. That Nextpower be required to pay NXT Power such damages as it has sustained as a consequence of Nextpower's infringement of the NXT POWER Mark and trebling of those damages under 15 U.S.C. § 1117.

**SAUL EWING LLP**

Dated: August 17, 2026

*/s/ Erin Westbrook*
Joseph M. Kuo
Casey Grabenstein
161 N. Clark Street, Suite 4200
Chicago, IL 60601
(312) 876-7100
joseph.kuo@saul.com
casey.grabenstein@saul.com

Erin Westbrook
90 South Seventh Street, Suite 3900
Minneapolis, MN 55402
(612) 225-2946
erin.westbrook@saul.com

***Attorneys for Plaintiff***

**VERIFICATION**

I, Thomas Gornick, being duly sworn, deposes and says:

I am the Founder and President of Plaintiff NXT Power, LLC. I have read the foregoing Verified Complaint and know the contents thereof and state the allegations are true and correct. I base this Verification on my own personal knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true and correct. The grounds of my knowledge, information, and belief, are derived from my position as Founder and President, my personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of public documents and Plaintiffs' records as well as conversations with Plaintiffs' employees.

Dated: August 11, 2026

Thomas Gornick, President